UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CAPELLA PHOTONICS, INC., <br><br> Plaintiff <br><br> v. <br><br> FUJITSU NETWORK COMMUNICATIONS, INC., <br><br> Defendant. | Civil Action No. 2:20-cv-00076-JRG <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT FUJITSU NETWORK COMMUNICATIONS, INC.'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................................... 1

    A. Capella Litigated the Predecessor Patents in NDCA .............................................. 2

    B. Capella Is a California-Based Company with No Ties to Texas ............................ 4

    C. Associated Evidence and Witnesses Related to Capella's Infringement Allegations, Which Focus on WSS Components of the Accused FNC Products, Are Located in NDCA .............................................. 6

III. THIS CASE SHOULD BE TRANSFERRED TO NDCA WHERE VENUE IS MORE CONVENIENT ..................................................................................................... 6

    A. Capella Could Have Brought This Action in NDCA .............................................. 7

    B. Private Interest Factors Strongly Favor Transfer .................................................... 7

    C. Public Interest Factors Strongly Favor Transfer ..................................................... 9

IV. CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Capella Photonics, Inc. v. Cisco Sys., Inc.*,
 711 F. App'x 642 (Fed. Cir. 2018) ...................................................................................2

*In re Genentech, Inc.*,
 566 F.3d 1338 (Fed. Cir. 2009)........................................................................................8

*In re Hoffman-La Roche Inc.*,
 587 F.3d 1333 (Fed. Cir. 2009).......................................................................................10

*ICHL, LLC v. NEC Corp. of Am.*,
 No. 5:08CV175, 2009 WL 1748573 (E.D. Tex. June 19, 2009) .....................................8

*Invitrogen Corp. v. Gen. Elec. Co.*,
 No. CIV A 6:08CV112, 2009 WL 331891 (E.D. Tex. Feb. 9, 2009)........................9, 10

*In re Nintendo Co.*,
 589 F.3d 1194 (Fed. Cir. 2009).........................................................................................9

*Regents of the Univ. of California v. Eli Lilly & Co.*,
 119 F.3d 1559 (Fed. Cir. 1997).........................................................................................9

*In re TS Tech USA Corp.*,
 551 F.3d 1315 (Fed. Cir. 2008)..............................................................................7, 8, 10

*In re Vistaprint Ltd.*,
 628 F.3d 1342 (Fed. Cir. 2010).........................................................................................9

*In re Volkswagen AG*,
 371 F.3d 201 (5th Cir. 2004) ............................................................................................7

**Statutes**

28 U.S.C. § 1331...................................................................................................................7

28 U.S.C. § 1338...................................................................................................................7

28 U.S.C. § 1391...................................................................................................................7

28 U.S.C. § 1400(b)..............................................................................................................7

28 U.S.C. § 1404(a) ......................................................................................................1, 2, 7

**Other Authorities**

U.S. Patent No. RE42,368 ...................................................................................................1

U.S. Patent No. RE42,678 ...................................................................................................2

U.S. Patent No. RE47,905 ...................................................................................................1

U.S. Patent No. RE47,906 ...................................................................................................1

Defendant Fujitsu Network Communications, Inc. ("FNC") respectfully moves this Court to transfer the case to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a).

## I.     INTRODUCTION

This is Capella's second patent infringement case against FNC but its first case against FNC in this District. It is not surprising that this Court is not Capella's first choice of forums. Plaintiff Capella is a Delaware corporation, headquartered in San Jose, California, in NDCA. It alleges no special connection to Texas in its Complaint, and FNC is a California corporation. In 2014, Capella sued multiple companies—including FNC—in the Southern District of Florida ("SDFL"), asserting infringement of predecessor patents to the asserted patents here. All of those cases were transferred to NDCA for convenience. Capella ultimately lost when all the claims were found invalid. Capella now seeks a different result by again charging FNC with infringement of (as Capella itself claims) "substantially identical" patents in a new forum.

SDFL has already determined, based on the same parties and allegedly "substantially identical" patents and allegations, that NDCA is clearly convenient for the parties. Nothing has since changed, except to make NDCA *even more* convenient based on the interests of judicial economy, given its familiarity with the parties, the patent family, and the issues presented.

## II.    FACTUAL BACKGROUND

On March 17, 2020, Capella filed this lawsuit against FNC, alleging infringement of U.S. Patent Nos. RE47,905 ("the '905 patent") and RE47,906 ("the '906 patent") (collectively, the "Reissue Patents"). Dkt. No. 1 ¶¶ 19, 27, 39, 69; Exs. 1-2.[1] The '905 and '906 patents were both issued on March 17, 2020, from reissue proceedings of U.S. Patent No. RE42,368 ("the '368

---

[1] References to Ex. _ refer to exhibits to the Declaration of Nathaniel T. Browand filed herewith.

patent") and RE42,678 (the "'678 patent") (collectively, "the Predecessor Patents").  Exs. 3-4.

### A. Capella Litigated the Predecessor Patents in NDCA

Capella previously litigated its claims of infringement of the Predecessor Patents against substantially the same accused products in NDCA.  In 2014, Capella filed a patent infringement complaint in SDFL, alleging that FNC infringed the Predecessor Patents in *Capella v. Fujitsu Network Communications, Inc.*, No. 14-20531 ("Capella-FNC").  Dkt. No. 1 ¶ 29; Ex. 5.  On the same day, Capella also filed three other cases in SDFL asserting infringement of the same two Predecessor Patents against Ciena, Cisco, and Tellabs.[2]

Pursuant to § 1404(a), SDFL transferred the First Wave Cases to NDCA, finding it clearly more convenient than SDFL given the proximity of NDCA to the key witnesses in the case.  Ex. 6.  The Honorable Edward M. Chen presided over the cases in NDCA.  Judge Chen conducted six hearings over the nearly six-year history of the case.  Judge Chen stayed the litigation pending the *inter partes* review ("IPR") proceedings of the Predecessor Patents.  Ex. 7.  All challenged claims were determined invalid in the IPRs, and the Federal Circuit affirmed that determination, resulting in cancellation of all asserted claims in the litigation.  *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, 711 F. App'x 642 (Fed. Cir. 2018).  After the Federal Circuit's judgment, Capella sought to amend its infringement contentions to assert additional claims from the Predecessor Patents in NDCA, and Judge Chen denied Capella's motion, resulting in dismissal of the First Wave Cases.  Ex. 8.

Before that dismissal, Capella pursued reissue of the Predecessor Patents, and those proceedings culminated in the issuance on March 17, 2020 of the Reissue Patents that Capella

---

[2] *Capella v. Ciena Corporation*, No. 14-20530 ("Capella-Ciena"); *Capella v. Cisco Systems, Inc.*, No. 14-20529 ("Capella-Cisco"); and *Capella v. Tellabs, Inc.*, No. 14-60350 ("Capella-Tellabs") (collectively, with Capella-FNC, "the First Wave Cases").

asserts here. Capella even alleges in this case that the Reissue Patents are substantially identical to the Predecessor Patents previously asserted by Capella in NDCA. Dkt. No. 1 ¶¶ 21, 24 ("One or more claims of the '905 patent is substantially identical to one or more claims of the original '368 patent," and "[o]ne or more claims of the '906 patent is substantially identical to one or more claims of the original '678 patent."). Capella also alleges that this case is sufficiently related to the earlier *Capella-FNC* case from the First Wave Cases as to give rise to notice of infringement by FNC since at least 2014. *See* Dkt. No. 1 ¶ 29.

On March 16, 2020, Cisco filed a declaratory judgment complaint in NDCA of noninfringement of the Reissue Patents. *See Cisco v. Capella*, No. 20-01858 (N.D. Cal.) ("the Cisco DJ Action"). Due to Capella's statements during the reissue proceedings regarding no difference in claim scope between the Predecessor Patents and the Reissue Patents, Cisco alleges that it had a reasonable apprehension of suit. Ex. 9 ¶¶ 21, 32; Ex. 10 ¶¶ 4-7, 25, 40. For its part, Capella does not want to litigate again in NDCA. Likely knowing that filing a substantially similar case in its first-choice forum (SDFL) would result in another transfer—Capella decided to file three new complaints, against the parties from the First Wave Cases, across two other districts far outside the subpoena power of California courts. One day after Cisco's DJ Action, Capella filed two complaints in this District—this case against FNC and a second against Infinera Corporation and related entities (collectively, "Infinera") (*Capella v. Infinera Corp.*, No. 20-00077)—and a third complaint in the District of Maryland against Ciena (*Capella v. Ciena*, No. 20-00702)—all of which asserted infringement of the Reissue Patents. NDCA found the Cisco DJ Action related to the *Capella-Cisco* action (from the First Wave Cases) and reassigned the Cisco DJ Action to Judge Chen. *Cisco v. Capella*, No. 20-01858, Dkt. No. 14-15 (N.D. Cal. Apr. 1, 2020). Judge Chen has already made substantive rulings in the Cisco DJ Action by granting Cisco's motion for

judgment on the pleadings for Capella's claims to pre-issue damages. Ex. 29. Recognizing Capella's belated strategy, Infinera has already filed a motion to transfer venue to NDCA. *Capella v. Infinera Corp.*, No. 20-00077, Dkt. No. 39.

### B. Capella Is a California-Based Company with No Ties to Texas

Other than filing suit in this District, Capella has no ties to Texas; it is a Delaware corporation and its principal place of business is in Mountain View, California in NDCA. Dkt. No. 1 ¶ 1; Exs. 11-12. As to Texas or this District, Capella does not allege that it has any offices or employees in this District, or anywhere else in Texas, nor does it allege that it makes or supplies any product or service anywhere, much less in Texas. *Cf.* Ex. 6 at 4. In fact, Capella alleges no special connection to Texas at all. *See generally* Dkt. No. 1.

On the other hand, Capella has established strong connections to NDCA, many of which are relevant to this case. In particular, at least five of Capella's most recent senior executives are located in NDCA—(1) Steve Reale (current Secretary), (2) Larry Schwerin (former CEO), (3) Rafael Torres (former CFO), (4) George Berberis (former COO), (5) Harvey Trop (former VP, Quality & Reliability)—and two others (Christopher B. Lucas (current CEO and CFO) and Bruce Gray (former President)) in nearby California cities. Exs. 13-20, 30. As for the patents themselves, the '906 and '678 patents name Jeffrey P. Wilde and Joseph E. Davis as inventors, and the '905 and '368 patents include a third inventor, Tai Chen. Exs. 1-4. All three inventors are located in NDCA. Ex. 21-23, 30. These individuals and their relevance to the issues in the case are summarized below:

| Name and Location | Relevance to Issues in the Case |
|---|---|
| Christopher Lucas<br>Glendale, CA | Capella's CEO and CFO, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the Patents-in-Suit. |

4

| | |
|---|---|
| Steve Reale<br>Corte Madera, CA | Capella's Secretary, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the Patents-in-Suit. |
| Harvey Trop<br>Fremont, CA | Capella's former VP, Quality & Reliability, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the Patents-in-Suit. |
| Rafael Torres<br>San Jose, CA | Capella's former CFO, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the Patents-in-Suit. |
| George Berberis<br>San Jose, CA | Capella's former COO, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the Patents-in-Suit. |
| Larry Schwerin<br>Saratoga, CA | Capella's former CEO, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the Patents-in-Suit. |
| Bruce Gray<br>El Dorado Hills, CA | Capella's former President, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the Patents-in-Suit. |
| Jeffrey P. Wilde<br>Los Altos, CA | Listed inventor of Patents-in-Suit and Original Patents. On information and belief, he likely has knowledge about conception and reduction to practice, the Patents-In-Suit, the Original Patents and their prosecution. |
| Joseph E. Davis<br>Morgan Hill, CA | Listed inventor of Patents-in-Suit and Original Patents. On information and belief, he likely has knowledge about conception and reduction to practice, the Patents-In-Suit, the Original Patents and their prosecution. |
| Tai Chen<br>San Jose, CA | Listed inventor of one of the Patents-in-Suit RE47,905 and one of the Original Patents RE42,368. On information and belief, he likely has knowledge about conception and reduction to practice, the Patents-In-Suit, the Original Patents and their prosecution. |

Capella itself has identified three individuals—including two of the above-identified individuals, Christopher Lucas, Steve Reale—as the *only* relevant Capella witnesses in its initial disclosures. Ex. 24.[3] Capella also identifies "[u]nidentified current and former employees of

---

[3] The third individual, Rick Snyder, could not be located and Capella provided no contact information for him.

Defendant and suppliers." *Id*.

### C. Associated Evidence and Witnesses Related to Capella's Infringement Allegations, Which Focus on WSS Components of the Accused FNC Products, Are Located in NDCA

In this case, Capella accuses the "FLASHWAVE® 9500 Packet Optical Networking Platform," "FLASHWAVE® 7500 optical transport system" and "1Finity" of infringement (collectively, "the Accused FNC Products"). Dkt. No. 1 ¶¶ 31-32; Ex. 25 at 2. Capella alleges that the Accused FNC Products infringe the Reissue Patents by virtue of their "ROADM functionality," which "is delivered using Wavelength Selective Switch[es] (WSS)" (the "WSS components"). Dkt. No. 1 ¶ 44; *see also* Ex. 25 at 2. In its infringement contentions, Capella makes clear that these WSS components, incorporated in the Accused FNC Products, are at the heart of its infringement allegations in this litigation. *See generally* Ex. 25 (identifying the "WSS switching modules" in Accused FNC Products as satisfying multiple claim elements in all asserted claims).

Importantly, FNC does *not* design, develop, or manufacture the WSS components used in the Accused FNC Products. The WSS components are instead supplied by Finisar and Lumentum. Ex. 26 at 6. None of the WSS suppliers are located in Texas, and none appear to design, develop, or manufacture the WSS components in Texas. Exs. 26-28, 30.

Because Capella has focused its infringement allegations on the WSS components, and has identified Defendants' "suppliers" as relevant witnesses in its initial disclosures, Ex. 24 at 3, key third-party witnesses and evidence in this case related to Capella's infringement allegations will likely be located in NDCA.

### III. THIS CASE SHOULD BE TRANSFERRED TO NDCA WHERE VENUE IS MORE CONVENIENT

The Court should transfer this case to NDCA in the interests of justice and judicial economy and because it is clearly more convenient for the parties, as SDFL has already found in

6

evaluating nearly identical factors. Ex. 6. A district court "may transfer any civil action to any other district or division where it might have been brought . . . for the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). Courts evaluate multiple private and public interest factors to determine whether a venue change would be more convenient for parties and witnesses or serve the interest of justice. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical considerations that make a trial easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d at 203. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict of law problems involving foreign law's application. *Id.*

### A. Capella Could Have Brought This Action in NDCA

Capella could have brought this action in NDCA, which would have subject-matter jurisdiction over patent-infringement actions under 28 U.S.C. §§ 1331, 1338. FNC is a California corporation and that shares a place of business with Fujitsu America, Inc. in Sunnyvale, California. *See* 28 U.S.C. § 1400(b) (stating that a "civil action for patent infringement may be brought in the judicial district where the defendant resides"); Dkt. No. 1 ¶ 2. The Accused FNC Products have been offered for sale nationally. Ex. 24 (noting sales in "North America"). Accordingly, FNC is subject to personal jurisdiction in NDCA for purposes of this action. 28 U.S.C. §§ 1391(b)-(d).

### B. Private Interest Factors Strongly Favor Transfer

*Relative ease of access to sources of proof:* Sources of proof here are more easily accessible in NDCA than in this District because the vast majority of the relevant fact witnesses reside in NDCA. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008). Capella's relevant

evidence and witnesses are located at its headquarters in NDCA, as identified in its initial disclosures. *See supra* Section II.B; Ex. 24. Technical, design, development, and sales documents, and other material (*e.g.*, prototypes) related to the WSS components—which appear to be at the heart of this dispute—likely are located at or accessible in NDCA. *See supra* Section II.C. Similarly, NDCA is home for Capella's own witnesses (executives and inventors)—eight of which reside in NDCA, two of which reside in neighboring California cities, and none of which appear to reside in this District or Texas. *See supra* Section II.B. And FNC's documents are located or accessible in both NDCA and this District. Thus, this factor weighs in favor of transfer. *TS Tech*, 551 F.3d at 1320-21.

*Compulsory process for witness testimony*: Many of the important witnesses in this case related to noninfringement and damages will be non-party witnesses, the vast majority of whom reside in NDCA. *See supra* Section II. For noninfringement and damages, this includes the third-party WSS vendors, Finisar and Lumentum. NDCA will be able to secure attendance of these third-party witnesses at trial using its subpoena power. *ICHL, LLC v. NEC Corp. of Am.*, No. 5:08CV175, 2009 WL 1748573, at *8-10 (E.D. Tex. June 19, 2009) (finding factor weighs in favor of transfer when transferee court had subpoena power over inventor, patent owner, prosecuting attorney, and other fact witnesses); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Litigating in this District will prevent FNC from subpoenaing these witnesses to testify at trial. In sharp contrast, FNC is unaware of any Capella or third-party witnesses that reside in Texas or within this District's subpoena power. This factor weighs heavily in favor of transfer.

*Cost for willing witnesses*: The majority of Capella's fact witnesses reside in NDCA. *TS Tech*, 551 F.3d at 1320; *see supra* Section II.B. The convenience of transferring this case to NDCA heavily outweighs litigating this case in this District, where Capella appears to have no offices or

8

relevant employees. *In re Nintendo Co.*, 589 F.3d 1194, 1198-99 (Fed. Cir. 2009). This factor strongly favors transfer.

*Practical considerations*: Because Capella's headquarters are located in NDCA, it would be less costly and more efficient for the parties to litigate this case in NDCA, which is the same forum where the Cisco DJ Action is proceeding as the first-filed case involving the Reissue Patents. Indeed, SDFL emphasized the importance of keeping all four of the First Wave Cases together in the same court. *See, e.g.*, Ex. 6 at 12. Since Infinera has already moved to transfer venue to NDCA, the same logic applies to this case, especially for the issues common to Cisco, Infinera and FNC (invalidity, intervening rights, and estoppel), which strongly favors transfer.

### C.  Public Interest Factors Strongly Favor Transfer

*Judicial economy*: The "interest of justice" and "judicial economy" "'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997); *see also Invitrogen Corp. v. Gen. Elec. Co.*, No. CIV A 6:08CV112, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009). Because Judge Chen in NDCA has extensive familiarity with the technology, the alleged substantially identical claims of the Predecessor Patents, the issues of invalidity, and estoppel that were raised in the First Wave Cases, *supra* Section II.A, and because he is presiding over the Cisco DJ Action, judicial economy counsels strongly in favor of transfer. *Invitrogen*, 2009 WL 331891, at *4-5 (citation omitted) (finding transfer of substantially related case preserves judicial economy when transferee court was "intimately familiar" with technology, having presided over previous cases involving some of the asserted patents, several of the same accused products, and essentially the same parties); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (noting that it promotes judicial economy for the same judge to hear related cases). This is especially salient because Judge Chen has already

9

made substantive rulings in the Cisco DJ Action by granting Cisco's motion for judgment on the pleadings for Capella's claims to pre-issue damages. Ex. 29. Judicial economy heavily favors transfer to prevent Capella from relitigating the same issues in a new forum, resulting in a colossal waste of judicial resources and to avoid conflicting rulings on the same issue from different courts.

*Local interests*: NDCA has a strong local interest in adjudicating this case because many of the key individuals related to the claims and defenses reside in or near NDCA. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (whether the case "calls into question the work and reputation of several individuals residing in or near that district"). Capella, its executives, the inventors, and FNC's WSS suppliers are located in NDCA. *See supra* Section II.C. This strong presence in NDCA outweighs the fact that FNC has places of business in both NDCA and this District. Dkt. No. 1 ¶¶ 2, 3.

Capella attempts to show local interest by asserting that FNC "has committed acts of infringement in this district and has a regular and established place of business in this district." Dkt. No. 1 ¶¶ 2-3, 9, 11. But FNC sells its products nationally, Ex. 24; *TS Tech*, 551 F.3d at 1321 (national sales mean that "citizens of [this district] have no more or less of a meaningful connection to this case than any other venue"), and there is no dispute that FNC has places of business in both NDCA and this District. Dkt. No. 14; Dkt. No. 1 ¶¶ 2, 3. This factor weighs in favor of transfer.

The remaining three public interest factors are neutral in view of the fact that NDCA and this District are equally capable of applying federal patent law, and both districts have competing advantages and disadvantages on time-to-trial and the number of cases on their respective dockets. *Invitrogen*, 2009 WL 331891, at *5-6.

### IV. CONCLUSION

For the foregoing reasons, FNC respectfully requests that the Court transfer this case to the Northern District of California.

Dated: August 31, 2020 						Respectfully submitted,


						By:  */s/ Melissa R. Smith*
							Christopher J. Gaspar
							cgaspar@milbank.com
							Nathaniel T. Browand
							nbrowand@milbank.com
							MILBANK LLP
							55 Hudson Yards
							New York, New York 10001-2163
							Telephone: (212) 530-5000

							Melissa Smith
							State Bar No. 24001351
							GILLAM & SMITH LLP
							303 S. Washington Avenue
							Marshall, Texas 75702
							Telephone: (903) 934-8450
							melissa@gillamsmithlaw.com

							***Attorneys for Defendant***
							***Fujitsu Network Communications, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 31, 2020.

                                                          */s/ Melissa R. Smith*
                                                          Melissa R. Smith

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant met and conferred with counsel for Plaintiff. Counsel for Plaintiff indicated that it is opposed to this motion

                                                          */s/ Melissa R. Smith*
                                                          Melissa R. Smith