IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CAPELLA PHOTONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FUJITSU NETWORK COMMUNICATIONS, INC., <br><br> Defendant. | Case No. 2:20-cv-76-JRG |

**PLAINTIFF CAPELLA PHOTONICS, INC.'S OPPOSITION TO DEFENDANT FUJITSU NETWORK COMMUNICATIONS, INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

327173406.1

I.     Introduction

The present motion concerns amendments to the claims of the '905 and '906 patents-in-suit that were added during reissue proceedings to clarify that the claims are directed to fiber collimators providing *and serving as* input and output "ports" (or more simply fiber collimator ports).  Prior to the amendments, some original claims of the corresponding '368 and '678 patents referred to the "ports" as input and output ports and other claims expressly recited fiber collimators "providing" input and output ports but did not *expressly* state that the fiber collimators were "serving as" the ports.  Defendant asserts that the clarified claims present new validity issues and thus are not "substantially identical" under 35 U.S.C. §252 (allowing past damages for reissue claims).  Alternatively, Defendant asserts that if the clarified claims present no new validity issues, Capella is collaterally estopped from asserting their validity in view of prior invalidations that occurred before the amendments in *inter partes* review ("IPR") proceedings.  Effectively, Defendant attempts to put Capella on the horns of a false dilemma without actually construing the full scope of any claim or carrying its heavy burden to show that it is entitled to judgment as a matter of law on either defense as to any specific claim.

Defendant's rock/hard place legal theory is not supported by law due in part to the differing standards and inquiries at issue.  The threshold issue is not whether intervening rights apply, but whether Capella is prevented by collateral estoppel from proceeding at all.  As to that threshold issue, Defendant has not carried its burden as to any claim.  First, the Supreme Court in *B&B Hardware* held that issues are not identical where, as here, the second action involves application of a different legal standard.  This also alone defeats the motion regardless of the nature of the claim amendments.  Moreover, at bottom, collateral estoppel does not apply to any of the reissue claims because the PTO allowed them, following invalidation in the IPRs, only

1

*after* additional claim language directed to fiber collimators. The PTO thus already determined that the new reissue claims are patentably distinct from the original claims and it cannot be said that the reissue claims do not present different issues of patentability from invalidated claims (as was the case in *XY* and other cases relied upon by Defendant). Defendant admits that "Capella substantively changed the claims of the asserted patents". This admission is determinative.[1]

Defendant alternatively seeks to bar Capella from recovering pre-filing damages under 35 U.S.C. §252 based on its contention that certain Asserted Claims in Capella's reissue patents are *not* substantially identical to a claim in its original patents. Defendant presents this issue as the flip side of the collateral estoppel coin, but that is not legally or factually supportable and the claim construction issues are premature. During the IPRs, where some but not all of the original claims of the '368 and '678 patents were held to be invalid, the U.S. Patent Trial and Appeal Board ("PTAB") construed the claims under the PTO's broadest reasonable interpretation standard. The BRI standard has historically allowed the PTAB to reason away narrower constructions that would otherwise exclude prior art and is one of the reasons why the former Chief Judge of the Federal Circuit called the PTAB a "death squad."[2] In this case, the PTAB used BRI to ignore evidence including the express statements summarizing the invention in the "Summary" of the patents:

> The present invention provides a wavelength-separating-routing (WSR) apparatus and method which employ an array of fiber collimators serving as an input port and a plurality of output ports; a wavelength-separator; a beam-focuser; and an array of channel micromirrors. '905 patent, 3:66-4:3 (emphasis added).

---

[1] Defendant requests judicial notice of a Cisco decision issued in the Northern District of California involving the same patents. Notably, the Order never finds that any specific claim fails to satisfy §252 or that Capella is barred from asserting its validity by collateral estoppel and the court has since reconsidered the decision.

[2] *See* https://www.ipwatchdog.com/2014/03/24/ptab-death-squads-are-all-commercially-viable-patents-invalid/id=48642/

*Under Phillips*, this statement alone or in combination with other evidence would act as a disclaimer to exclude a broader definition of "ports." *See SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1341-42 (Fed. Cir. 2001) (reference to "the invention" acted as a disclaimer), but the PTAB did not find the claims so limited under BRI. Indeed, in this case, the PTAB even held that "fiber collimators providing" input and output ports did not limit the claimed ports to fiber collimator ports. (Dkt. 62-12, pp. 13-14). The PTAB reasoned that under BRI "providing" could be construed to include making the ports available elsewhere in the system. These BRI claim constructions enabled the PTAB to find the claims obvious in view of a combination of multiple references. During the reissue, Capella clarified the claims to *expressly* specify "fiber collimators providing <u>and serving as</u> … ports" or more simply "<u>fiber collimator</u> … ports." As admitted by Defendant, these edits presented new issues of patentability at the PTO, but that does not resolve the question of intervening rights against Capella because the intervening rights inquiry does not use the BRI claim construction standard. Instead, the district court determines the "correct" interpretation of the original claims under the *Phillips* standard and compares that claim as construed to the correct interpretation of the reissue claims under the *Phillips* standard. When this is done, courts often find that the claims before and after amendments are "substantially identical." *See Convolve, Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313 (Fed. Cir. 2016), discussed below.

Defendant's §252 motion is premature as the analysis of whether one or more reissue claims are substantially identical should be decided after *Phillips* claim construction where one of the issues presented is whether original claims were directed to fiber collimator ports. Defendant asserts that the claims have already been construed, but that construction was the broadest interpretation under BRI and not the "correct" construction under *Phillips*.

## II.  The Patents-In-Suit

The patents-in-suit are directed to optical switches used in the telecommunications industry.  In the patents, it is necessary to transform light output from an input optical fiber into a free-space collimated beam that can be directed to a controllable free-space beam deflection element (*e.g.*, a micromirror) where it is deflected to a desired output optical fiber.  Fiber collimators are used in the inventions to input light from optical fibers into free space collimated beams and to move collimated beams from free space to desired output optical fibers.  Fiber collimators provide collimated beams of light.  Other ports do not.

The patents provide, *inter alia*, "a fiber collimator is typically in the form of a collimating lens (such as a GRIN lens) and a ferrule-mounted fiber packaged together in a mechanically rigid stainless steel (or glass) tube.  The fiber  collimators *serving as the input and output ports* may be arranged in a one-dimensional array, a two-dimensional array, or …" and "*Each output port is provided by a quarter-pitch GRIN lens* …." ('905 patent, 8:58-59 & 9:34-40) (emphasis added).  The specific arrangement of the "array" is described as optional, but collimators serving as the input and output ports is not.

A preferred embodiment of the invention is set forth in figure 1A, reproduced here.  An "array of fiber collimators 110, providing an input port 110-1 and a plurality of output ports 110-2 through 110-N", is shown.  A collimated input beam emanating from the collimator grin lens of input port 110-1 is separated into wavelength channels at grating 101, the beams are focused and each channel 

4

is deflected by a beam deflection element of array 103 whereby the collimated beams are directed to the collimator grin lens of the desired output ports 1102-N.

The claims of the '905 and '906 patents at issue in this litigation were reissued after an IPR of the original patents before the PTAB. In the IPRs, some but not all of the claims of the "original" '367 and '678 patents were found to be obvious in view of prior art combinations including a patent to Beouvitch. During the IPRs, Capella consistently asserted that the input and output "ports" set forth in the original claims were "fiber collimator" ports and not the "circulators" used by Beouvitch. Capella's statements were not used to interpret the claims in the IPRs, but those statements are now of record and show that the claims of the original patents before reissue are limited to fiber collimator ports. *See* generally Dkt. 56 & 56-35 through -41.

The PTAB, using BRI, rejected Capella's claim construction and held that the claims at issue were not necessarily limited to fiber collimator ports. After the conclusion of the IPRs, during reissue proceedings for the claims of the '367 and '678 patents, Capella clarified the claims of the patents to expressly recite fiber collimator ports or fiber collimators providing and serving as ports. The PTO allowed the claims of the '905 and '906 patents in suit after Capella made these express clarifications. Capella filed suit on the '905 and '906 patents alleging that one or more claims of the '905 and '906 patents are "substantively identical". (Dkt. 1, ¶¶21, 24).

### III. Defendant's Motion Is Premature And Should Be Deferred Until After Markman

An intervening rights defense does not apply to reissued claims that are substantially identical to claims of the original patent. 35 U.S.C. §252. Substantially does not mean "literally identical." *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987); s*ee also*, *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998). Thus, for intervening rights to apply, there must be a substantive change in scope between the original and amended

5

claims. *Convolve*, 812 F.3d at 1322-23.  In *Convolve,* the court held that "amendments made during reexamination do not necessarily compel a conclusion that the scope of the claims has been substantively changed." *Id*. at 1322. "This is true even where the claims at issue were amended during reexamination after a rejection based on prior art." *Id*. (*citing Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362 (Fed. Cir. 1991); *R & L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1350–51 (Fed. Cir. 2015) (reasoning for the amendment does not matter)).

In determining substantial identicality, the relevant inquiry is whether the scope of the amended claims is substantially identical to the scope of the original claims based the claim construction analysis established by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2015) (en banc).  *See Convolve*, 812 F.3d at 1322-23.  This inquiry requires the court "to analyze the claims of the original and the [amended] patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram,* 952 F.2d at 1362–63.

As a general proposition, questions of claim construction are not suitable for resolution on a Rule 12 motion.  *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349-51 (Fed. Cir. 2018) (claim construction dispute was not suitable for resolution on motion to dismiss); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012) ("claim construction at the pleading stage … was inappropriate").  Because claim construction is generally unsuitable for resolution on a pleadings challenge, virtually every court that has addressed the issue has held that the inquiry of whether an original and an amended claim are identical should not occur until after formal claim construction. *See*, *e.g.*, *Etagz, Inc. v. Quiksilver, Inc.*, 2012 WL 2135497 at **2-3 (C.D. Cal. June 11, 2012) (substantial identicality inquiry should not occur until after formal claim construction).

6

## IV. Defendant Fails To Establish Any Specific Asserted Claim Is Not "Substantially Identical" To One Or More Of The Original Patent Claims

Defendant fails to meet its burden to establish an intervening rights affirmative defense. Defendant argues that the claims of the asserted patents cannot be substantially identical to claims of the original patents because Capella purportedly amended the claims to avoid prior art, but this argument ignores the differing standards at issue. Although the claims were amended to present new issues of patentability, the amendments did not necessarily change the scope of the claims under *Phillips*. Under *Phillips*, courts seek to find the "correct" interpretation of the claims and often interpret them the same both before and after clarifying amendments. In *PPC Broadband, Inc. v. Corning Optical Communications RF LLC*, 815 F.3d 734, 740-43 (Fed. Cir. 2016), the Federal Circuit explained the different claim construction standards, explained that different constructions are likely to arise with frequency depending on the standard used, can be outcome determinative, and upheld a PTAB BRI claim construction even though it was broader than the "correct" interpretation under *Phillips*.

Defendant's argument is similar to one rejected by the Federal Circuit in *Convolve*. There, the accused infringer argued that because the patentee added the modifier "seek" in front of "acoustic noise" in response to a prior art rejection during reexamination proceedings, the scope of the claims was necessarily altered. *Convolve*, 812 F.3d at 1322-25. The Federal Circuit reversed, noting that patent examiners and courts are governed by two very different standards. *Id*. at 1325. PTO patentability decisions are governed by the "broadest reasonable interpretation" standard. *Id*. In contrast, courts are required to interpret the scope of the claims under the *Phillips*. *Id.* As a result, the PTO's BRI interpretation of claims is not dispositive or binding on a court in the intervening rights analysis. *Id.; see generally SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016) (PTAB claim construction not binding

on district courts); *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2015 WL 5996363 (E.D. Tex. October 14, 2015) (same). Because the district court in *Convolve* adopted wholesale the PTO's interpretation of the claim limitations, the court erred and its summary judgment order based on intervening rights was reversed. *Id*. at 1325*; See also, Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996)*(rehearing denied)* (substituting the narrower term "housing" for the term "furnace" restated without substantially changing the scope of the claim); *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989) (addition of the word "bottom" before "wall" did not amount to a substantive change).

It is also critically important to note that each claim in suit is unique, and Defendant has made no effort to show that any asserted claim *as a whole* was substantially narrowed under a *Phillips* construction – such that a device that infringed at least one original claim would not infringe an asserted claim as reissued. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1378 (Fed. Cir. 2017). Defendant simply argues that the language "fiber collimator" was added for at least one port in each asserted claim, but does not show how that impacts the overall scope of any claim such that it would cause non-infringement under a *Phillips* construction. Indeed, Defendant glosses over the fact that "fiber collimator" was present in the majority of the original claims (*see*, *e.g.*, claims 1-60 of the '368 patent) and fails to show what would infringe an original claim with that language under *Phillips* but not an asserted claim, as is required.[3]

To the extent Defendant attempts to argue claim construction under *Phillips* in the present motion filed under Rule 12(c), it is premature for the reasons stated above. Moreover, as set forth in Capella's opening claim construction brief (Dkt. 56) and supporting evidence,

---

[3] In *Vocalife LLC v. Amazon.com, Inc.*, 2020 WL 4732189 at *4 (E.D. Tex. Aug. 14, 2020), cited by Defendant, the patent owner admitted the claims were not substantively identical.

incorporated here by reference, Defendant's argument that the ordinary and customary meaning of "port" is broad enough to include circulators is wrong. Defendant also fails, and cannot provide with this motion filed under Rule 12(c), any evidence as to how one of ordinary skill would have interpreted "port" as used in the claims of the original patents. And again, although Defendant refers the court to claim constructions set forth by the PTAB, those constructions are neither binding on nor properly before the Court on this motion. *See, e.g.*, *Convolve*, 812 F.3d at 1322-25 ("the examiner's finding under the [BRI] that the claims are not limited to 'seek acoustic noise' cannot be dispositive").

Defendant also argues that the claims of the original patents recite both "port" and "collimator," and argues that different words in the same claims presumably have different meanings. But this argument ignores, *inter alia*, the patent specifications, which describe only fiber collimator ports, distinguish "circulators" throughout the "Background" and clearly state in the "Summary" that "The present invention … employ[s] an array of fiber collimators serving as an input port and a plurality of output ports," and similar statements made by Capella during the IPRs. This language as a whole acts as a disclaimer under *Phillips* on the original claims, including claims that survived the IPRs, to exclude prior art ports other than fiber collimator ports. *See SciMed Life Systems*, 242 F.3d at 1341-42 (reference to "the invention" acts as a disclaimer), *citing Cultor Corp. v. A.E. Staley Manufacturing Co.*, 224 F.3d 1328 (Fed. Cir. 2000) (same).[4]

## VI. Capella Is Not Collaterally Estopped From Litigating Any Of The Asserted Claims

### A. Defendant Excludes Numerous Asserted Claims From Its Motion

---

[4] Defendant refers to the instance of "collimators" in claim 8 of the '368 patent, but "collimators" there is not a narrowing of the ports in claim 1, but rather an additional limitation regarding the "alignment mirrors" added in claim 7. Claim 8 does not specify "fiber collimators."

Defendant expressly limits its collateral estoppel arguments to certain claims (Motion, n.11) and therefore concedes that Capella is not estopped from pursuing pre-issuance damages for infringement of several asserted claims, including claim 29 of the '905 patent and claims 72, 79, 81-83, 85, 92, 96, 98, 100, 118, 122, 123, 125-127, 129-131, 138, and 139 of the '906 patent.

### B. Defendant Admits That Collateral Estoppel Does Not Apply

Defendant admits and asserts in its motion that "Capella substantively changed the claims of the asserted patents," the claims "are not 'substantially identical' to the claims of the original patents" and were "substantially narrowed." (Motion at 9-13). These admissions are determinative on the issue of collateral estoppel. Defendant's alternative motion for partial judgment on collateral estoppel is based on the assumption that Capella will admit that the reissue claims in suit did not present new issues of patentability. Capella does not make this admission.

### C. PTAB Determinations Of Invalidity Cannot Have A Preclusive Effect Here

Defendant improperly assumes a PTAB finding of invalidity can have collateral estoppel effect in subsequent district court litigation. Collateral estoppel, however, requires that the issues be "identical" in both proceedings. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015). Issues are not identical "if the second action involves application of a different legal standard." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015)(alterations omitted). It is thus black-letter law that "a party who has carried the burden of establishing an issue by a preponderance of the evidence" in one proceeding "is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard." 18 Wright & Miller, supra, §4422 (emphasis added); *see* Restatement (Second) of Judgments §28(4). As the Supreme Court has explained, where "the clear-and-convincing standard applies" in the later action, as here, a prior judgment

based on a "preponderance of the evidence" standard "could not be given collateral estoppel effect." *Grogan v. Garner*, 498 U.S. 279, 284-85 (1991).[5]

Straightforward application of that settled rule should foreclose any effort to give PTAB rulings on validity, which are issued under a preponderance standard, issue-preclusive effect in district court actions, which require proof of invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011) (contrasting standards). For that reason, this and other district courts have held that PTAB decisions are not preclusive in district court. *See Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*, 403 F. Supp. 3d 571, 602 (E.D. Tex. 2019) (citing *B&B Hardware* and declining to apply issue preclusion in light of different standards of proof in *inter partes* proceedings and district court litigation); *Sanofi-Aventis U.S. LLC v. Mylan GmbH*, 2019 WL 4861428 at *1 (D.N.J. Oct. 2, 2019)

---

[5] The courts of appeal universally agree. *See, e.g., Cinelli v. City of Revere*, 820 F.2d 474, 480 (1st Cir. 1987) (exception to collateral estoppel exists where "adversary has a significantly heavier burden than he had in the first action" (quoting Restatement (Second) of Judgments §28(4)); *Cobb v. Pozzi*, 363 F.3d 89, 113 (2d Cir. 2004) ("Courts and commentators alike have recognized that a shift or change in the burden of proof can render the issues in two different proceedings non-identical, and thereby make collateral estoppel inappropriate"); *In re Braen*, 900 F.2d 621, 624 (3d Cir. 1990) ("[D]isparate burdens of proof foreclose application of the issue preclusion doctrine"); *United States v. Bostian*, 59 F.3d 474, 480 (4th Cir. 1995) ("A matter established in an action requiring a lower burden of proof is not conclusive if the same issue is raised in an action requiring a higher burden"); *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995) ("Collateral estoppel does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings"); *Marlene Indus. Corp. v. NLRB*, 712 F.2d 1011, 1016 (6th Cir. 1983) ("At a minimum, it can be said that the vast majority of courts recognize that a difference in burden of proof is a factor which should be considered in applying the doctrine of collateral estoppel"); *Guenther v. Holmgreen*, 738 F.2d 879, 888 (7th Cir. 1984) ("It is, of course, well established that issue preclusion may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required. For example, the failure to carry a higher standard of proof does not preclude a subsequent attempt to satisfy a lower standard." (citation omitted)); *Turner v. U.S. Dep't of Justice*, 815 F.3d 1108, 1113 (8th Cir. 2016) ('[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same" (quoting *B&B Hardware*, 575 U.S. at 154)); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1322 (9th Cir. 1992) ("[C]ollateral estoppel does not preclude claims that have a different burden of proof than previously decided claims"); *Bulloch v. Pearson*, 768 F.2d 1191, 1193 (10th Cir. 1985) ("[F]ailure to carry a high standard of proof does not preclude a subsequent attempt to satisfy a lower standard"); *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 694 (11th Cir. 1984) on reh'g on different issues, 779 F.2d 1485 (11th Cir. 1986) ("[W]here the level of proof is lower in the second proceeding the failure of an adversary to carry a higher burden in the earlier proceeding does not allow use of the failure in the earlier proceeding to collaterally estop the adversary in the later proceeding"); *North v. Walsh*, 881 F.2d. 1088, 1096 (D.C. Cir. 1989) ("[I]ssue preclusion does not close litigation of an issue when different legal standards apply in the second action").

327173406.1

("[T]he B&B Hardware decision states clearly: '[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.'" (second brackets in original)).

The Federal Circuit has acknowledged as much. In *Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013), it held that "a final, affirmed PTO decision determining invalidity" of a patent claim requires dismissal of an infringement action based on the same claim. *Id*. at 1344. But the Federal Circuit made clear that dismissal was appropriate "not because of collateral estoppel" – which would not apply "because different standards apply in a PTO reexamination and a validity proceeding before the district court" – but because the PTO's "cancellation" of the patent "extinguishes the underlying basis for suits based on the patent." *Id*. In other words, the claims no longer existed.

Defendant cites *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282 (Fed. Cir. 2018), where the panel stated that the Federal Circuit's "affirmance of [a PTO] invalidity finding" has "an immediate issue-preclusive effect on any pending or co-pending actions involving the patent." *XY*, 890 F.3d at 1294. Consistent with *Fresenius*, the *XY* opinion should be read as merely indicating that the binding effect of PTAB invalidation arises only from the fact that the basis of the lawsuit in court (the patent(s) at issue) has been destroyed. Admittedly, some district courts have interpreted *XY* more broadly. *See Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 257 (D. Mass. 2019); *Fellowes, Inc. v. Acco Brands Corp.*, No. 10 Civ. 7587, 2019 WL 1762910 at *6 (N.D. Ill. Apr. 22, 2019). However, they impermissibly read *XY* as doing something the Federal Circuit cannot do: overrule Supreme Court precedent holding that prior judgments under a "preponderance" standard cannot yield collateral estoppel in later actions where "the clear-and-convincing standard applies." *Id*.; *see also,*

12

327173406.1

*B&B Hardware*, 575 U.S. at 154 ("'[I]ssues are not identical if the second action involves application of a different legal standard[.]'"). Nor can the Federal Circuit exempt patent cases from the principles of federal procedure that govern in every other area of law. *Cf. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006). That goes double here. When Congress intended to create special or different estoppel rules in connection with PTO proceedings, it did so expressly in the statute itself.[6] *See Andrus v. Glover Const. Co.*, 446 U.S. 608, 616-17 (1980) ("Where Congress explicitly enumerates certain exceptions…additional exceptions are not to be implied.").[7]

### C. The Validity Issues At Issue Are Not Identical To Those Decided By The PTAB Given Differences In Claim Construction Standards

Defendant's motion also relies on a second faulty legal premise: that if a reissued patent claim is "substantially identical" to an original claim for §252 purposes, then the reissue claim necessarily presents "identical issues of patentability". Defendant cites no authority in support of that proposition. To the contrary, the test for deciding whether reissue claims are "substantially identical" to original claims for purposes of §252, and the test for deciding whether a reissue claim presents "identical issues of patentability" compared to an invalidated claim for collateral estoppel purposes, are quite different. The PTAB has recognized as much, holding that the two

---

[6] For example, 35 U.S.C. §315(e)(2) – titles "Estoppel…Civil actions and other proceedings" – provides that the petitioner in an IPR that results in a final written decision with respect to a patent claim "may not assert," in a civil action in district court … "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." The current §317(a) provides that, under certain circumstances, "no estoppel…shall attach."

[7] An expansive reading *XY* is especially unwarranted given that the cited estoppel language was dictum. Because both parties assumed that an affirmance of the Board decision would result in estoppel, that question was neither briefed nor disputed. *Id.* at 1294. *XY* thus is not precedent on that question. *See Beacon Oil Co. v. O'Leary*, 71 F.3d 391, 395 (Fed. Cir. 1995) ("[s]tare decisis applies only to legal issues that were actually decided in a prior action" and that an issue was "not litigated or resolved in" an earlier case where the parties had "stipulated" to a particular conclusion).

13

tests can lead to divergent results. *Google Inc. v. ContentGuard Holdings, Inc.*, No. CBM2015-00040 (PTAB June 21, 2016). *See* **Exhibit 1**, filed herewith.

In *ContentGuard*, the PTAB considered whether the claim term "meta-right" excluded "usage right[s]." *Id*. at 26, 71. In parallel proceedings, the district court – applying *Phillips* – construed the term to exclude "usage right[s]." *Id*. at 71. The PTAB adopted the opposite construction. *Id*. at 26. Applying a BRI broadest interpretation, the PTAB found that "meta-right" could include "usage rights." *Id*. at 19-24. The PTAB then ruled that, under that construction, the patent claims were anticipated by prior art and invalid. *Id*. at 46. When the patentee moved to amend the claims to clarify that the term "meta-right" excludes "usage right[s]," the PTAB granted the motion, finding the claims patentable as modified. *Id*. at 53, 69.

Despite finding the original claims invalid, and the amended claims valid, the PTAB also ruled that the two claims were "substantially identical" for purposes of §252. *ContentGuard*, *supra,* at 71-72. The PTAB explained that, "when determining whether the scope of [the amended claim] is 'substantially identical' to that of [the original claim], the focus should be on how [the original claim] would be construed by the district courts – not on how this same claim" *was* or "would be construed [by the PTAB] under the broadest reasonable interpretation standard." *Id.* at 71. And the PTAB found that, "[w]hen we apply the district court's construction of the claim term 'meta-right' to [the original claim], the scope of this original claim includes the newly added feature in [the amended claim]." *Id. ContentGuard* therefore makes clear that claims can, on one hand, be "substantially identical" for §252 purposes but, on the other hand, ***not*** present identical issues of patentability for collateral estoppel.

The present case closely resembles *ContentGuard*. The IPRs in this case turned in large part on whether the "ports" in the original claims were "fiber collimator" ports as Capella urged.

14

(Dkt. 62-11, p. 12).  Applying BRI, the PTAB concluded that "port" was broad enough to "encompass[] circulator ports."  *Id*.  Under that broad construction, the PTAB found the claims invalid in light of prior art.  *Id*. at 43.  Capella, however, later obtained reissue claims explicitly stating that the "ports" are "fiber collimators."  (Dkt. 62-5) (comparing original and reissue claims).  There can be no contention that, for collateral estoppel purposes, the reissue claims present "identical issues of patentability" as the original claims before the PTAB.  The PTAB itself found the original claims invalid, but the PTO later reissued the amended claims when "fiber collimator" limitations were expressly added to the claims.  Similarly, despite the change and the amendment under BRI, one or more claims can be substantially identical under *Phillips* for purposes of §252 where the PTAB's construction of the original claim is no longer relevant.  *See*, for example, claim 68 of the '906 patent where "and serving as" was added but that language was always stated to be part of the invention in the summary of the invention and elsewhere in the patent specification and file history.

> **D.   Defendant Fails To Establish That Capella Fully And Vigorously Litigated The Validity Of Every Patent Claim That Was Before The PTAB And That Application Of Collateral Estoppel Would Be Appropriate And Fair**

Defendant also fails to adequate support its conclusory assertion that Capella fully and vigorously litigated the validity of each and every original patent claim before the PTAB.  *See*, *e.g.*, *Voter Verified, Inc. v. Election Systems & Software LLC*, 887 F.3d 1376, 1382-83 (Fed. Cir. 2018).  For example, Capella did not raise additional arguments with respect to many dependent claims beyond those directed to their associated independent claim.

Finally, it would be fundamentally inappropriate and unfair to collaterally estop Capella from litigating the validity any newly issued claim.  Indeed, applying preclusion would elevate one determination by a governmental body (the PTAB) over a subsequent decision by the same agency (the PTO).

15

327173406.1

|  |  |
|---|---|
| Dated:  December 28, 2020 | By: /s/ *Robert D. Becker*<br>Charles Everingham IV (TX SBN 00787447)<br>Email: *ce@wsfirm.com*<br>T. John Ward (TX SBN 20848000)<br>Email: *tjw@wsfirm.com*<br>Claire Abernathy Henry (TX SBN 24053063)<br>Email: *claire@wsfirm.com*<br>Andrea Fair (TX SBN 24078488)<br>Email: *andrea@wsfirm.com*<br>WARD, SMITH & HILL, PLLC<br>P.O. Box 1231<br>Longview, TX 75606<br>Telephone: (903) 757-6400<br>Facsimile: (903) 757-2323<br><br>Robert D. Becker (Cal. Bar 160648)<br>Email: *rbecker@manatt.com*<br>Christopher L. Wanger (Cal. Bar 164751)<br>Email: *cwanger@manatt.com*<br>MANATT, PHELPS & PHILLIPS, LLP<br>1 Embarcadero Center, 30th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 291-7400<br>Facsimile: (415) 291-7474<br><br>Attorneys for Plaintiff,<br>CAPELLA PHOTONICS, INC. |

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served on all counsel of record who have consented to electronic service on this 28th day of December, 2020.

*/s/ Robert D. Becker*
Robert D. Becker